Good morning, Your Honors, and may it please the Court. My name is Michael Duprince, and I represent Appellate Mr. Howard Duncan, Jr. in this citizenship proceeding. Mr. Duncan derived citizenship from his United States citizen father, who acquired citizenship at birth. His connections to- Can you talk just a little louder? I want to get every- or bring this mic here. Absolutely. Perfect. Thank you. Thank you, Your Honor. Mr. Duncan derived citizenship from his United States citizen father, who acquired citizenship at birth. His connections to this country and to his United States citizen father are precisely those envisioned by Congress. Mr. Duncan's real interests are in the United States. He is not a nominal citizen. Because Mr. Duncan is a citizen as a matter of law, these removal proceedings against him must be terminated. If this Court finds contrary, Mr. Duncan's appeal is vindicated by the United States Supreme Court's decision in Sessions v. DiMaia. Under DiMaia, the matter would require a remand for a determination of whether Mr. Duncan is eligible for cancellation of removal. Accordingly, this Court need not reach Mr. Duncan's claim under the Convention Against Torture. And if I may, Your Honors, I'd like to focus today's argument on the question of derivative citizenship in light of DiMaia. To begin, the fatal flaw in the BIA's decision is that it equates physical custody with a physical residence requirement. Based on our understanding of state law and what physical custody means, physical custody cannot be coterminous with a physical residence requirement. We can see later in the statute, 8 U.S.C. 1431b, one below the statute where we are, that the CCA shall apply to a child adopted by a United States citizen parent when the child has been in the legal custody of and has resided with the adopting parent. We do not have a physical residence requirement in the statute governing Mr. Duncan's claim for derivative citizenship. To the extent that the BIA has also found that the IJ's decision was not in clear error, we also state that that was an erroneous standard of review that would require, in the alternative, correction to review the physical custody requirement as a legal determination. Therefore, this Court has jurisdiction under two grounds, one, 1252a2d, that physical custody is a question of law, and therefore this case presents a legal question for this Court's review. And second, this Court has de novo jurisdiction to decide the citizenship claim under 1252b5a, as there is no genuine issue of material fact for this Court. Therefore, this Court has jurisdiction to decide the citizenship claim de novo. The BIA below effectively found that the act of Mr. Duncan's father becoming incarcerated severed or dissolved the set of legal rights and obligations between his father and himself. That is not in accordance with our understanding of the constitutional rights that are accorded to biological parents over their natural children. Maryland law has found that the mere act of a parent incurring an involuntary separation, such as entry into incarceration, does not mean an automatic termination of parental rights. While Mr. Duncan's father was incarcerated, as the BIA has clearly acknowledged, Mr. Duncan's father exercised a series of... Does your argument hinge on finding that there is no practical distinction between physical custody and legal custody? Here as framed before this Court... If you could just give me a yes or no, that would help me so much. Sure. I think for practical purposes, legal and physical custody is a unitary term that is used to describe a parent. Legal and physical custody are distinctive concepts. A parent can have physical custody and legal custody based on a court order, for example, based on a divorce. Here they've been appealed up as distinctive concepts. We have a question of whether there was physical custody below, because the BIA found it was not necessary. What I think, at least a question in my mind, is how they relate to each other. I'm interested that you think they relate to each other too. What we want to do is say, is one of them totally contained in the other, or are they just like a Venn diagram? They have some overlapping, but not all. Thank you, Your Honor. I would conceive it as that Venn diagram. When you are a parent, you have an inherent set of rights, including custody. At least under Maryland law... That's legal custody. Is that what you're talking about? Breaking down a general set of custodial rights, under Maryland law, the legal custody aspect would be more power to make long-term decisions over your child, such as education, discipline, medical decisions. Are you getting to the relationship between the two? Because if you could just focus specifically on that, and if you just can't answer it, just say you can't answer it other than by analogy. I think, Your Honor, I cannot answer it except for by analogy. Okay, well let's just... This would really help us. Okay, so a parent can have legal custody, but not have actual custody. That is correct, Your Honor. And a parent can have actual custody, but still would have to have legal custody. That is correct, Your Honor. However, under Maryland law, physical custody is a set of rights and obligations. And I said actual. I should have said physical. Right. I understood, Your Honor. But your answer stays the same? It stays the same, yes. Counsel, there are two cases that address that in their Maryland cases, and I'm not an American expert, but both in the Taylor case and the Santo case, the definitions that the Maryland state courts talk about seem to require physical presence, physical possession. The Taylor case, which comes first, defines physical custody for a few lines, and then it concludes with during the time the child is actually with the parent having such custody. And then the Santo case has slightly different language, but doesn't purport to overrule Taylor at all, and it ends with a little bit different language that says that while the child is under the parent's care and control. And that terminology from the Maryland cases seems to suggest possession or physical access and possession that seems inconsistent with incarceration. How do you square those? Yes, Your Honor. To the extent that physical custody under Maryland law is a set of rights and obligations, as that passage you recited begins, that would imply that when a parent is with their child, they are the individuals who at that point have that decision-making power. I would not view it as a preclusion to say that only when that child is physically present with that parent, that that is when that person has custodial rights. If they're physically present with them, it was for a couple months or a couple years at the very beginning of the time your client came to the country, and for over ten years I think there hasn't been that physical presence that these cases talk about. Do you agree with that? I would agree with the factual predicate, Your Honor. However, physical presence means something different. Physical custody? You said physical... The question was physical presence. I meant custody. I apologize for confusing you. Okay. Yes, that is correct, that when Mr. Duncan entered into the United States as a lawful permanent resident, he was within his father's legal and physical custody. The question is whether when Mr. Duncan's father entered incarceration, whether these custodial rights were dissolved or terminated for purposes of this statute. The answer, in my opinion, is no. We submitted a 28J letter referencing the Second Circuit's opinion in Khalid, which we think is a perfect roadmap for this Court to see that a separation between a parent and a child does not mean that physical custody somehow suddenly dissipated. It's the inverse or converse of this subject. Exactly, Your Honor. Technically, Mr. Duncan's father is in the physical custody of the Bureau of Prisons, is he not? Well, the answer is yes. Mr. Duncan's father was, that is correct. Yes. How does that affect your analysis? If Mr. Duncan's father is in a physical custody that denies him any access on a day-to-day basis to his son, does that not not take the Because we've never really gotten an answer to the question of how they differ. But it would seem to me that in a situation where a parent is in the physical custody of the governor, that that would mean a pretty significant delineation. Yes, Your Honor. I do appreciate the distinction. However, Mr. Duncan's father's physical custodial status is not what is of importance in terms of him exercising his rights over his child. For the purposes of my question, that's exactly what you're asserting is fact, what I'm questioning. And that is, why doesn't the father's constraint in the physical custody of the Bureau of Prisons make a difference? Why? Not that. And I know that you don't think it does. My question is, why doesn't it? It does not because, as the BIA found, he was still able to make decisions from jail. Yes, he may not have been going to bed in the same home every night as his parents. Well, he couldn't. Correct. Because the law has deprived him of that right. It is derived. It is an action. And as a consequence to his incarceration in prison, he lost other civil rights, too, I would imagine. That is correct, Your Honor. Not just the right to vote. Correct, Your Honor. There's a bag of rights that you lose when you are incarcerated. Yes, Your Honor. However, custodial rights over your child is not one of them. And your authority for that is what? Maryland law states that physical custody is a set of rights and obligations to make decisions over a child. When it goes on, you stop where you prefer because it goes on to say, to write an obligation to provide a home for the child and to make the day-to-day decisions required during the time the child has actually been custodied with the parent having such custody. So you stop your explanation at a convenient point that aligns the point that cuts against it. And at least as I understand from the facts, it isn't clear that Mr. Duncan communicated with his father even on a monthly basis. Your Honor, from the record, there were daily, if not phone calls, every other day with monthly visits. I see. Okay. But can you sort of, taking the definition as a whole, leaving out the parts you don't like, how does Mr. Duncan's physical custody in your presence not affect the analysis? Yes, Your Honor. I do not mean to elide part of the definition. As I tried to say earlier, the leading clause is that it's a set of rights and obligations. However, to the extent that the definition continues that when the child is in the parent's control or custody, or excuse me, care or control, is not limiting to the extent that this parent can only be a physical custodian when that child is physically with. I'm sorry. I think that's best I can. Thank you, Your Honor. And to step back a little bit further, to the extent that a parent has constitutional rights over their child, the mere act of going into an incarceration setting does not mean that your rights have been terminated per se. Of course it doesn't. I don't think anyone's suggesting that. That's why there's two, arguably, provisions in the statute. One being legal custody, which I think would encompass what you're talking about. But then later, physical custody was added, which suggests it means something different. And we've been going a while, but I think we're having trouble understanding if being in prison where by law you are not able to be with the person, if that doesn't separate you from physical custody, what would? Yes, and Your Honor, if I make it here, I'm about to run out of time. Thank you for your judgments. I think the Khalid decision from the Second Circuit speaks to that very well, that this physical custody requirement was not present in the previous iteration of the CCA. This physical custody requirement seems to indicate Congress wants there to be a close connection with a United States citizen parent. Can I just follow up? And part of it is sort of as an identity judge thought about this question, which is also what I'm wrestling with. There is a procedure for the termination of immoral rights. Yes, Your Honor. And it affects legal custody, which also suggests that there is a distinction. And you said that a parent has a constitutional right to custody, but a person also has a constitutional right to vote. There are lots of rights that are impacted sub salimio by the act of physically incarcerating someone. Why would not physical custody be warranted? Your Honor, the Santosky case does show the flip side of that, where you have the state moving to terminate parental rights. They say the act of termination would mean that a parent could no longer exercise physical custody. So yes, a termination would preclude legal custody, but it would also preclude physical custody simultaneously and any chance of obtaining that. I'm beyond time. Do you want me to continue? No. Do you want to try again? Okay. Let me listen to what we talked to the government about and give us your best response to it. Thank you, Your Honor. Good morning. May it please the Court. My name is Lindsay Donahue on behalf of the Attorney General. There are two issues before the Court today. First, whether Mr. Duncan satisfied the derivative citizenship statutes requirement that he be in his father's physical custody where his father was incarcerated. And two, whether the Board properly reviewed the immigration judge's CAT acquiescence determination as a factual question in line with this Court's precedent. Can I ask you, is it the government's position that an incarcerated person could never have physical custody of a child? I think the operative fact there is different than a parent who is on a business trip, a military person who is deployed. To answer your question, I think... The problem is that a lot of the law seems to be written in the context of divorces. That's true. So you have a share of custody back and forth. And it's not clear on the question of a prolonged absence. I think the question is in the context of a mandated, is it the government's position that in the context of a mandated, prolonged, or extensive, or custody such as incarceration, does that automatically include physical custody? Using Maryland law as a guidepost, yes. What if the person is in a psychiatric institution, not a prison? Again, if we're using Maryland law as a guidepost, I think the answer is still yes. Do you think it's your position that we must use Maryland law? Not necessarily, but in this case... I know the government's position in this case. See, the problem is lawyers always want to talk to us about this case, and we always want to talk about where this case goes for the next case. That's why we ask you the hypotheticals. We're trying to see what principles... The reason I keep saying this case is because the board didn't give us a definition of physical custody beyond Maryland statutes. Well, the board didn't operate on the correct standard of review, did it? As to determining whether physical custody is... When you say the correct standard of review... You apply the legal standard to facts. The administrative judge finds the facts, but the board then makes a de novo determination about whether those facts meet the legal standard. Surely that's not the law. That's brand-new law. So is Your Honor's question that in determining whether or not Mr. Duncan was in physical custody of his father that the board employed an incorrect standard of review? Yes. I think at this point U.S. Bank is instructive in... What is instructive? U.S. Bank, the Supreme Court's decision in U.S. Bank. In that decision, the court was analyzing the question of in a mixed question of fact and law like this, what is the proper standard of review that a reviewing body should use? Right. And they decided that when the court has to really wade into the facts to figure out who did what,  No, but don't we wade into the facts and the fact is entirely different. There are definitely two reviews with respect to what those facts are. But the question of whether those facts, whether the combination of those facts, whether the collection of those facts meets a legal definition, such as legal custody of a physical custody. Because it has a mixed question, which some parts of it get a definitive standard and some parts don't? No, because that's not what U.S. Bank held. Assuming this court were to think the law as a whole is otherwise, and that a no vote review is required under the application of facts found by the immigration judge to the law, when the Board of Appeals looks at it, what's your position ever? I know that it doesn't look like that's exactly what was done or maybe not done, but if that were done, would that make a difference in this case? If the court's position is that the board should have used de novo review? In the mixed law and facts situation. If that's the court's position, then it should remand, because the board clearly did use a clear error standard of review. I think my colleague is getting the next question, which is really going to the next level. The question he asked was the next level, which is do you think it makes any real difference? And maybe not. But still, they're supposed to use the right standard of review, right? That is true. But we would argue that under U.S. Bank, a deferential standard is appropriate. Turning to the citizenship issue, I'd like to start where my colleague left off, considering the statute as a whole. Both Mr. Duncan and the colleague court, the case that we keep referencing, agreed that a primary purpose of the statute is to ensure that the child has a strong connection to the United States through a United States citizen parent. That's why Congress added physical custody to the statute, which before only required legal custody. And when Congress adds a second term, the court presumes that they have distinct, non-superfluous meaning. And here on the plain language of the statute, physical custody encompasses some sort of corporeal, physical, possessive term. As a matter of fact, what does the record tell us about how often Mr. Duncan was in communication with his father by telephone? It seems that they were in contact either every day or almost every day by telephone. And I was confusing that with the number of times he visited. Yes, which appears to be a much lesser number, depending on how far away the father's facility was. And there's also a question of fact about the extent to which Mr. Duncan's father contributed to the support. That's true. Mr. Duncan's grandmother in her affidavit says that he regularly sends about $250 or so. But Mr. Duncan Sr., his father who was incarcerated, says that he was constrained in the amount that he sent to about $100 every month unless he asked the warden for special permission, which he said he seldom did. I thought the record was a little fuzzy on what he was talking about there. I don't think, I'm not sure I think that's a fair characterization of the record. But it's really, we can read the record and make up our own will. The opposing counsel talks about the GLID case. Yes. And talks about, and in the briefs we didn't go into it a lot in oral argument, about how if a strict physical possession or physical control test were applied, a GLID would be inconsistent with that. That's not the Fourth Circuit, but I'd like your views on GLID. Second, they make the analogy to someone who's deployed in the military. And while I get that one's voluntary and one's not, they're still not in physical possession and control. So please respond on those two. I'll start with the first question, which is about the strict physical custody requirement. Colley didn't settle on a definition of what physical custody means, but it did say that a one-month separation, especially in light of the reason that the statute that Colley was incarcerated under, which encouraged continuing parental involvement, that a one-month separation would not be enough to truncate physical custody, where he had lived with his father for the entire time he was in the United States. So you would distinguish those on a prolonged period, as Judge Duncan talked about earlier, as opposed to a shorter period? Yes, Your Honor. What's the line that the government says is the dividing line? Your Honor, we don't know. Colley, in this case, represents opposite ends of the spectrum. I'm not sure what happens in the middle. What if you had some high school student where his whole high school period was studying abroad? And this goes to Judge Quattlebaum's second question about a military deployment as well. The operative difference there, in the government's view, is whether or not they have a right or an obligation where they can exercise over their child. Someone who is separated only by distance can still choose when to call their child, when they can visit, when to have the child visit them. But Mr. Duncan's father was unable to do that, because he actually... I'm sorry. I'm sorry. Go ahead. In answer to Judge Mott's first question, it seemed that he would say that incarceration was a per se, far from physical custody. And the rationality as to the distinction between that and the psychiatric war is that the physical custody of the father is distinct in that it is both mandated and the father's right to serve his child. I'm trying to come up with something that I can... a framework that I can put this into. So that's what I'm looking for. And it would help me if you would factor those things into a timeframe and other characteristics that would give me some parameters. I think it comes back to the Maryland law definition of being able to exercise care and control, or being able to make those day-to-day decisions while a child is with you. But see, I think you can hypothesize that you would be doing that. Maybe the facts of this case don't show that. But if you're on the telephone every day and you're dictating to someone, for example, a caregiver that does not even speak English, and you're telling them all these things that they do, and you do speak English, you know, I just... I'm not sure that's really helpful to just mimic back what the Maryland case law says. Perhaps if someone is making those kinds of daily decisions all the time, perhaps yes. But we don't have that here. What we have here is a father who, by my count, made three decisions in his child's life that his child would go to a Nigerian boarding school for a time, that he would play football, and that he could buy Air Jordans. No, Your Honor. That he had with his son, no. The record doesn't really support either way. I would require the government to view that some prolonged period of incarceration is by definition not physical custody. I think the variable is the duration and the level of choice and control that they can exercise over their child's life. Would that make a difference if it was a long duration, but there was evidence in the record? I don't know that there is evidence in this record, but there was evidence that they were talking every day, that there were decisions made by the person that was in prison about the parent? Would that person then satisfy the requirement? Under the Maryland definition, I still don't think so, because it does require while the child is with the parents in incarceration. The problem is that this statute was drafted for a different purpose. It was drafted for the shared custody that comes with the dissolution of a marriage. It's not terribly helpful, or at least it's a lot less helpful, when you're talking about a prolonged separation. I would agree, but this is the definition that we are left with by the agency's decisions. Do you look to Maryland law because? Because the proceedings occurred in Baltimore, the immigration judge, in the absence of a federal definition of physical custody, found that Maryland law was instructive, given it was the jurisdiction. Is there any overriding? Is there a Fourth Circuit or Supreme Court law saying that the immigration judge must look to the state where the proceeding is before it rather than other states, for example? Not that I am aware of. Given the facts of this case and the definition which requires those day-to-day decisions, it appears that the person making those decisions, the person who was exercising the care and control, was not Mr. Duncan Sr., but was his grandmother. She was the one who provided a house for him, who provided consistent financial support, who took him to and from school, to and from practice, who made arrangements and paid for his care when he went to Nigeria. And for those reasons, Mr. Duncan cannot show that he was in the physical custody of his father to satisfy the definition that is required of him. I would also like to turn to discussing the CAT standard of review. Mr. Duncan has been convicted of two crimes involving moral turpitude and a firearms offense, so he can't seek review of the agency's underlying factual determination as to his CAT claim. Instead, he raises a legal question, arguing that the board should have reviewed the immigration judge's acquiescence finding under a de novo standard of review. But that argument disregards this court's precedent in St. David v. Casey. No. There we were talking about our standard of review. Well, Mr. Duncan offers no explanation for why, if this court reviews this as a factual question, why the board would treat it any differently. Well, there's an explanation in the case itself. We're under this statute in which the Congress, in its wisdom, has decided that our review is very limited. There's nothing wrong with that. But again, there is... So there's a lot of reason why there would be review of what an immigration judge did by the BIA, but we wouldn't have jurisdiction to review the BIA. Well, I'm not sure that I agree with that reading, because Stathis says that acquiescence is a factual question. There are facts in it. That's right. And in Turkson, this court gave acquiescence as an example of the kind of factual finding over which the board would review for clear error. And Mr. Duncan has shown nothing that reverses that, shown nothing to explain why the board would not review it as a factual question where this court does. If there are no other questions, I'll conclude here. Thank you very much. Mr. DeQuince, do you have any rebuttal? Yes, Your Honor. Your Honors, returning back to the BIA's error, the BIA erred by equating physical custody with physical residency. Well, the Maryland law defines physical custody as the physical care, supervision of child. Yes, Your Honor, the statute does. At common law, the Maryland Court of Appeals has clarified that definition. Are you talking about Santos? Yes. Yes, Your Honor. We can go back to those cases. If you look at Santos and Taylor together, it's kind of like the statute. You define rights and responsibilities, but the end of the holdings in those cases talk about fall in the physical custody of the parent. Yes, Your Honor. However, going more to a concept of Santos where it's a parent's care and control, we do see here that Mr. Duncan's father did exercise care and control through— But you keep—it does also say care. So focus on that for just a minute and tell us how it's met here. Yes, Your Honor. The act of providing money, the act of being an emotional guardian, the act of supporting your child, albeit not directly next to your child or going to bed in the same home every night, is a form of caring for your child. And just because you're incarcerated does not mean that your love and affection and care for your child is abrogated, especially when you are exercising those through sending money daily or almost every other day, phone calls, visits, and exercising decision-making on a daily basis, though through someone else. And that is an exercise of care and control when you're making someone's upbringing decisions. And does the fact that, as Judge Qualabong pointed out, that physical custody was added later, does it not connote that it is to be analyzed distinctly from legal custody? I think the fact that, yes, it does need to be analyzed distinctly, Your Honor, in that it was added for a reason. Congress would not have done it. And didn't think it was subsumed in. Correct, Your Honor. And to that extent, when we look to congressional intent, it appears they wanted some kind of connection between a United States citizen parent and their child. And here we have that. And it also implies that they viewed legal custody and physical custody as distinct. Yes, Your Honor. It would be pretty easy to say we're interested in some connection between We got legal custody and we want some sufficient connection with the child. That would have been one way they could write that if your intent was what, if your position on the intent was what the Congress was. But they didn't use those words. They used physical custody. They could have said that, Your Honor. However, when we look at the adoption statute, one step below in 1431, they asked for legal custody and physical residence. So to that extent, physical residence means something different than physical custody. And it may not be one-for-one coterminous with physical residence. So to the extent that Congress added this term, the Khalid decision illuminates this very persuasively, that we want a connection with a parent, not just someone being a nominal citizen in the United States by mere happenstance. And we do not have that here, Your Honors. Thank you. Thank you very much. We will ask our clerk to adjourn the court. And we will have a brief break.
judges: Diana Gribbon Motz, Allyson K. Duncan, A. Marvin Quattlebaum Jr.